UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| D&G HOLDINGS, LLC | CIVIL ACTION NO. 17-1045 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| THOMAS E. PRICE | MAGISTRATE JUDGE HORNSBY |

---

## MEMORANDUM ORDER

Before the Court is the Motion to Dismiss [Record Document 16] filed by Alex M. Azar, II, appearing in his official capacity as the Secretary of the Department of Health and Human Services.[1] Plaintiff, D&G Holdings, LLC ("D&G"), formerly operating as Doctors Lab, brought this action for "review and enforcement" of a decision of the Medicare Appeals Council. Pursuant to 42 C.F.R. § 405.1136(d), D&G names the Secretary of the Department of Health and Human Services as a defendant. Defendant moves to dismiss D&G's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons discussed below, Defendant's motion [Record Document 16] is **GRANTED**.

## I. Background

### A. Facts

From 1986 until April 2016, D&G (as Doctors Lab) operated as an independent

---

[1]Pursuant to Fed. R. Civ. P. 25(d), Alex M. Azar, II, Secretary of the United States Department of Health and Human Services, is substituted for former Secretary Thomas E. Price.

medical laboratory that received Medicare funds for providing services to nursing homes and other homebound persons throughout Louisiana. Record Document 1, p. 2. According to D&G, AdvanceMed, a Medicare Zone Program Integrity Contractor ("ZPIC"), began requesting records from Doctors Lab in October 2011, and additional requests were made in May 2013. Id. at 3-4. In a letter dated December 19, 2014, AdvanceMed alleged that Doctors Lab had received overpayments from Medicare in the amount of $8,329,967.03, primarily due to improper billing practices related to prorating mileage. AdvanceMed explained that the alleged overpayment was calculated through statistical analysis and extrapolation of a sample of 99 claims. Thus, while the actual overpayment associated with these 99 claims was $9,894.27, this resulted in an extrapolated overpayment of $8,329,967.03. Id. at 4.

By letter dated December 31, 2014, Novitas Solutions, Inc. ("Novitas"), the Medicare Administrative Contractor for Louisiana, relying upon AdvanceMed's review and extrapolation, instructed Doctors Lab to refund $8,329,967.03 to the Medicare program. Id. at 5. Plaintiff would go on to challenge this determination through the administrative appeals process. The Fifth Circuit recently summarized the appeals process for service providers seeking to challenge an overpayment determination made by a Medicare contractor.

> Providers who dispute an overpayment determination may challenge it in a lengthy appeal process. At the outset, a Medicare Administrative Contractor makes an "initial determination" regarding the overpayment amount. *See* 42 C.F.R. § 405.920. A provider who is displeased with the Medicare Administrative Contractor's initial determination may then seek a "redetermination"—the first step in a five-step appeal process. *Id.* §§

> 405.940–.958. The redetermination is conducted by employees of the Medicare Administrative Contractor who were not involved in the initial determination. *Id.* § 405.948. Second, if the provider remains dissatisfied, the provider may request a "reconsideration." *Id.* § 405.960. A Qualified Independent Contractor, another private contractor, conducts the "independent" reconsideration. *Id.* § 405.968. Third, if the provider still remains dissatisfied, the provider may request a hearing before an administrative law judge (ALJ). *Id.* § 405.1000(a). The ALJ reviews the case de novo. *Id.* § 405.1000(d). Fourth, either the provider or CMS, through its contractors, may request that the Medicare Appeals Council (Council) review the ALJ's decision. *Id.* § 405.1100(a). The Council, like the ALJ, reviews the case de novo, and its decision constitutes the Secretary's final decision. *Id.* § 405.1000(c). Fifth, if all else fails, the provider is entitled to "judicial review of the Secretary's final decision ... as is provided in section 405(g) of this title." 42 U.S.C. § 1395ff(b)(1)(A).

Maxmed Healthcare, Inc. v. Price, 860 F.3d 335, 338 (5th Cir. 2017). In some circumstances, a provider may be allowed to skip certain steps in the appeals process through escalation. Specifically, if the ALJ fails to issue a decision within 90 days, a provider may escalate the appeal to the Medicare Appeals Council (the "Council"), upon which the Qualified Independent Contractor's decision becomes the decision subject to the Council's review. Family Rehab., Inc. v. Azar, 886 F.3d 496, 499 (5th Cir. 2018) (citing 42 C.F.R. § 405.1100).

After receiving the initial overpayment demand, Doctors Lab submitted its request for redetermination to Novitas in January 2015. Record Document 1, p. 5. Novitas issued a partially favorable redetermination; however, adding interest amounts, Novitas still found that Doctors Lab owed $8,506,965.02. In July of that same year, Doctors Lab filed a request for reconsideration with the Qualified Independent Contractor ("QIC"), C2C Solutions, Inc. Id. at 8-9. C2C Solutions, Inc. similarly issued a partially favorable

reconsideration decision; however, upon recalculation, the updated total amount alleged to be due, including interest, was $9,012,040.37.[2] Id. at 9. Unsurprisingly dissatisfied, D&G requested a hearing before an ALJ, and eventually, escalation to the Council. The appeal was escalated and, in November 2016, the Council entered an order remanding the case to an ALJ for development of the record and a hearing. Id. at 12; Record Document 1-2, p. 27. After more than 90 days elapsed without a hearing, D&G once again requested escalation to the Council. Record Document 1, p. 12.

On July 13, 2017, the Council issued a decision ultimately reversing the QIC's unfavorable reconsideration. The decision states, in part:

> After a thorough review of the case record and the appellant's arguments, the Council reverses the QIC's September 18, 2015 reconsideration which, in the main, affirmed the overpayment determination. The Council takes this action based on its finding that the underlying bases for the overpayment are not sufficiently supported by evidence of record.

Record Document 1-3, pp. 3-4. D&G claims that, as a result of this decision, it is entitled to the total amount of recouped payments, which it calculates to be $4,136,258.19, plus interest. Record Document 1, p. 14. It claims that Defendant has refused to pay these amounts. Accordingly, D&G filed this action seeking a court order requiring Defendant to pay the principle sum of $4,136,258.19, plus interest. Id. at 15.

### B. The Secretary's Motion to Dismiss

The Secretary claims that D&G has received the balance of the recouped

---

[2] At this point in the appeals process, Plaintiff filed a previous suit with this Court in an attempt to stop what it characterized as premature recoupment of the alleged overpayment. See D&G Holdings, LLC v. Sylvia Mathews Burwell, 156 F. Supp. 3d 798 (W.D. La. 2016).

overpayment, an amount it calculates as $1,828,133.78, and further, that Medicare has actually overpaid D&G by $107,523.66.[3] Record Document 16-1, p. 7. Defendant thus argues that D&G is not truly seeking judicial review of the Council's decision; instead, D&G disagrees with the amount of money paid by Medicare pursuant to that decision and seeks to have this Court review claims, determine which claims were recouped pursuant to the overpayment, and determine the total amount recouped. Id. at 7-8. Defendant claims this is a new issue that was not before the Council and was therefore not exhausted. Because exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the Medicare Act, Defendant argues this suit must be dismissed for lack of jurisdiction.

D&G responds that the Council's July 13, 2017 decision [Record Document 1-3] constitutes the Secretary's final decision and, as such, acted to exhaust D&G's administrative remedies and entitled it to judicial review. Record Document 18, p. 5 (citing Maxmed Healthcare, 860 F.3d at 338). D&G further claims that the effect of the Council's decision was to reverse the overpayment determination upon which Novitas relied to recoup money from D&G, and, pursuant to that reversal, the Secretary was required to "'provide for repayment of the amount recouped plus interest at the same rate as would apply' had the overpayment determination been upheld on appeal." Id. (quoting 42 U.S.C. § 1395ddd(f)(2)(B)). D&G frames the issue before this Court to be whether Novitas has complied with the Council's reversal and the Medicare statutes and regulations related to

---

[3]The Secretary attaches to his motion a declaration from Shaena Parker ("Parker"), a supervisor at Novitas. Record Document 16-2. Parker's declaration alleges that of the $8,329,967.03 overpayment, Novitas had only collected $1,901,416.44. Id. at 3. It further details the amounts remitted, which total $2,008,940.10. Id. at 2-3.

repayment. It argues that, while this specific issue (the repayment of recouped funds) may not have been addressed by the Council, the larger matter involving the overpayment determination undoubtedly was, and that is sufficient for this Court to exercise jurisdiction.

Plaintiff does not dispute that it received the payments listed in Parker's declaration (totaling $2,008,940.10), but does dispute that only $1,901,416.44 was recouped. Record Document 18, pp. 12-13. It attaches the declaration of R. Christopher Rosenthal, an accountant and consultant, to support its position that the total amount remaining owed by Novitas is either $1,835,644.59 or $4,399,009.94. Record Document 18-1, pp. 1-6; see Record Document 18, p. 14. The Court need not concern itself with the particulars of the disputed amounts; it suffices to say that the parties do not agree on the amounts recouped or the amounts, if any, that are owed. The issue before this Court is simply whether there is jurisdiction to consider the dispute.

## II. Standard

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a defendant to challenge the subject matter jurisdiction of the court to hear a case. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). If such jurisdiction is lacking, the case is properly dismissed. Home Builders Ass'n of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). As the party asserting jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. Ramming, 281 F.3d at 161.

## III. Discussion

Here, Defendant asserts sovereign immunity, and it is well settled that the United

States is immune from suit unless its sovereign immunity is expressly waived. Lehman v. Nakshian, 453 U.S. 156 (1981). "'Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.'" Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007) (quoting Lewis v. Hunt, 492 F.3d 565, 570 (5th Cir. 2007)). Absent a waiver of sovereign immunity, a federal court does not have subject matter jurisdiction to entertain suits against the Government. Id.; see also Lehman, 453 U.S. at 160.

Defendant argues that D&G's claims are barred by 42 U.S.C. § 405(h) until D&G has exhausted the administrative appeals process. Record Document 16-1, pp. 8, 12. "The third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." Heckler v. Ringer, 466 U.S. 602, 614–15 (1984) (footnotes omitted).[4] 42 U.S.C. 405(g) provides for judicial review of any *final* decision of the Secretary. See id. at 605 ("Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim . . . ."). A "final decision" is rendered only after the claimant has pursued the claim through all designated levels of administrative review, or after the claimant has escalated the claim to the Council and the Council acts or fails to act within 180 days. Id. at 606;

---

[4] The language of § 405(h) reads, in part: "No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." See also 42 U.S.C. § 1395ii.

Family Rehab., 886 F.3d at 501 (citations omitted).

D&G does not contest that its claim arises under the Medicare Act and that a final decision of the Secretary is required for this Court to exercise jurisdiction. Instead, it maintains that a final decision has been issued which allows this Court to consider the dispute at hand. D&G relies on Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000), for its claim that only the "action" arising under the Medicare Act need be exhausted and not the particular issue of amounts to be repaid or amounts previously recouped. In Illinois Council, an association of nursing homes ("the association") argued that the federal courts had jurisdiction to hear its claim challenging a set of regulations applied to nursing homes that are found to be noncompliant with certain statutory or regulatory requirements. Illinois Council, 529 U.S. at 6. The association invoked § 1331 jurisdiction and did not follow the Medicare review route as set forth by statute. The Court of Appeals had found § 1331 jurisdiction based on its reading of Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667 (1986), which it interpreted as limiting the scope of § 405(h) to only "amount determinations," thus allowing the district court to exercise jurisdiction over the association's challenges to the regulations. See Illinois Council on Long Term Care, Inc. v. Shalala, 143 F.3d 1072, 1075 (7th Cir. 1998), rev'd, 529 U.S. 1 (2000). The Supreme Court disagreed, and instead found it "more plausible to read Michigan Academy as holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." Illinois Council, 529 U.S. at 19. The association argued that its claims fell within the

Michigan Academy exception because procedural regulations existed which limited "the extent to which the agency itself [would] provide the administrative review channel leading to judicial review, for example, regulations insulating from review decisions about a home's level of noncompliance or a determination to impose one, rather than another, penalty." Id. at 23. Thus, the association claimed that application of the channeling requirement would practically amount to a denial of review. In rejecting this argument, the Supreme Court stated:

> The [association]'s members remain free, however, after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends. The fact that the agency might not provide a hearing for that particular contention, or may lack the power to provide one . . . is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, . . . including, where necessary, the authority to develop an evidentiary record.

Id. at 23–24 (internal citations omitted). D&G claims this passage authorizes the present suit because the "particular contention" at issue–the amounts previously recouped and now owed pursuant to the reversal of the overpayment determination–need not have been addressed by the Appeals Council because the "action" itself–the overpayment determination–was channeled through the agency. The Court is not persuaded.

In Illinois Council, the association sought to challenge the validity of Medicare regulations, arguing that they violated various statutes and the Constitution. See id. at 5. Here, D&G does not make the same kind of statutory or constitutional challenges. D&G

does not challenge the statute it cites as providing for repayment of the recouped funds plus interest, 42 U.S.C. § 1395ddd(f)(2)(B), but instead claims that Novitas has, since the Council's decision, failed to fully comply with the statute. See Record Document 28, p. 5. Notably, D&G does not claim that Defendant has failed to pay it any amount in order to effectuate the Appeals Council's decision. Cf. Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 770 (5th Cir. 2011). Instead, D&G challenges the *amount* it was paid without providing this Court with any argument or indication that this issue was before the Appeals Council when it issued its final decision. And while D&G frames its claim as a statutory issue concerning the repayment of recouped funds pursuant to 42 U.S.C. § 1395ddd(f)(2)(B), the issue seems to be a factual one– that is, which payments were recouped pursuant to the initial overpayment determination. Not only has there been no final decision of the Secretary on this issue, it does not seem to be the kind of "statutory or constitutional contention" referenced in the Illinois Council opinion and relied upon by D&G.[5] Furthermore, and as highlighted by the Secretary, D&G does not seek the reversal

---

[5]Additionally, in Illinois Council, the association "complain[ed] that a host of procedural regulations unlawfully limit[ed] the extent to which the agency itself [would] provide the administrative review channel leading to judicial review, for example, regulations insulating from review decisions about a home's level of noncompliance or a determination to impose one, rather than another, penalty." 529 U.S. at 23. Thus, the association claimed that it was limited in its ability to litigate its claims within the administrative appeals process, and the Illinois Council Court went on to assure that, after exhaustion, the association would be able to raise these claims in federal court. Here, D&G does not argue that it is somehow barred or limited in raising the issue that is now before this Court within the administrative appeals process. The Court specifically sought to elicit D&G's position on this issue in a minute entry calling for supplemental briefing. See Record Document 26, p. 2 ("D&G should clearly articulate its position regarding the availability of administrative procedures to remedy its claims."). While D&G does claim that reopening is not an alternate remedy, it does not claim that

or any kind of modification of the Council's July 13, 2017 opinion, which it characterizes as "fully favorable." Record Document 1, p. 2.

D&G suggests that its claim is a statutory issue "the agency [did] not, or [could not] decide," see Record Document 28, p. 5 (citing Illinois Council, 529 U.S. at 23-24), but the Court disagrees with this characterization. First, the Court finds it illogical that it would be asked to "review" a determination that does not appear to have been before the Appeals Council. See 42 U.S.C. § 405(g) (providing for judicial review of the Secretary's final decisions and authorizing a federal district court to enter a "judgment affirming, modifying, or reversing the decision"); Patsy v. Fla. Int'l Univ., 634 F.2d 900, 903 (5th Cir. 1981) (citing McKart v. United States, 395 U.S. 185, 193-95 (1969)), rev'd on other grounds, 457 U.S. 496 (1982) (listing the policy purposes behind the exhaustion requirement). And while D&G argues that the amount of repayment of recouped funds could not have been decided by the Council because the dispute did not arise until after the Council rendered its final decision, this only emphasizes what is problematic about D&G's finality argument. The agency has not been given an opportunity to review this decision and correct alleged errors. Furthermore, as a practical matter, the decision of how much D&G is owed pursuant to the Appeals Council's decision seems less akin to the issues referenced by the Court in Illinois Council that an Appeals Council "does not, or cannot, decide," 529 U.S. at 23, and more akin to an initial determination. See 42 C.F.R. § 405.1046 ("The amount of payment determined by the contractor in effectuating the ALJ's or attorney adjudicator's decision is

---

it cannot in any way challenge the amount paid in connection with the Appeals Council's decision within the administrative process. See Record Document 28.

a new initial determination under § 405.924."); 42 C.F.R. § 405.924(b)(11) (providing that an initial determination includes any "issues having a present or potential effect on the amount of benefits to be paid under Part A or Part B of Medicare, including a determination as to whether there was an underpayment of benefits paid under Part A or Part B, and if so, the amount thereof.").[6] Even if not classified as an initial determination, the Court is not convinced that the issue has been exhausted and finds D&G's reliance on Illinois Council unavailing as applied to the issue in this case. Exhaustion is a jurisdictional prerequisite, and Plaintiff bears the burden of establishing jurisdiction. Family Rehab., 886 F.3d at 500-01. The Court finds that D&G has failed to meet this burden.

## IV. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss [Record Document 16] is **GRANTED**. A judgment consistent with this ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 27th day of JULY, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[6]Defendant argues that each individual claim for which D&G asserts they were denied payment is an initial determination. Record Document 27, p. 4 n.3.