**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

D&G HOLDINGS, L.L.C.                    CIVIL ACTION NO. 17-1045

VERSUS                                  JUDGE ELIZABETH E. FOOTE

THOMAS E. PRICE                         MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a motion to dismiss [Record Document 40] filed by Defendant, Alex M. Azar, II, ("Secretary") appearing in his official capacity as the Secretary of the Department of Health and Human Services.[1] After the motion was fully briefed, the Court held oral argument and ordered the parties to submit additional briefing. Record Documents 44, 47, and 48. The parties have now filed supplemental briefs, and Defendant's motion is ripe for review. Record Documents 53 and 55. For the reasons stated herein, Defendant's motion is **GRANTED.**

### I.   Background

#### A.   Facts

D&G Holdings, L.L.C. ("D&G"), operating as Doctors Lab, ran as an independent medical laboratory providing services to nursing homes and homebound individuals throughout Louisiana from 1986 to 2016. In December 2014, a Medicare Zone Program Integrity Contractor called AdvanceMed alleged that Doctors Lab had received

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Alex M. Azar, II,  Secretary of the United States Department of Health and Human Services, is substituted for former Secretary Thomas E. Price.

$8,329,967.03 in overpayments from Medicare, largely due to improper billing practices related to prorating mileage. To reach this figure, AdvanceMed reviewed ninety-nine claims, found an overpayment of $9,894.27, and used statistical analysis and extrapolation.

On December 31, 2014, Novitas Solutions, Inc. ("Novitas"), the Medicare Administrative Contractor for Louisiana, relied on AdvanceMed's review and extrapolation to demand Doctors Lab refund $8,329,967.03 to Medicare. Doctors Lab submitted a redetermination request to Novitas in January 2015, which initiated the five-level administrative appeals process.[2] Doctors Lab continued through the administrative appeals process, eventually receiving a fully favorable decision from the Medicare Appeals Council ("Appeals Council"). The Appeals Council concluded that "the case record cannot

---

[2] The Fifth Circuit summarized the five-step process as follows:

At the outset, a Medicare Administrative Contractor makes an "initial determination" regarding the overpayment amount. *See* 42 C.F.R. § 405.920. A provider who is displeased with the Medicare Administrative Contractor's initial determination may then seek a "redetermination"—the first step in a five-step appeal process. *Id.* §§ 405.940–.958. The redetermination is conducted by employees of the Medicare Administrative Contractor who were not involved in the initial determination. *Id.* § 405.948. Second, if the provider remains dissatisfied, the provider may request a "reconsideration." *Id.* § 405.960. A Qualified Independent Contractor, another private contractor, conducts the "independent" reconsideration. *Id.* § 405.968. Third, if the provider still remains dissatisfied, the provider may request a hearing before an administrative law judge (ALJ). *Id.* § 405.1000(a). The ALJ reviews the case de novo. *Id.* § 405.1000(d). Fourth, either the provider or CMS, through its contractors, may request that the Medicare Appeals Council (Council) review the ALJ's decision. *Id.* § 405.1100(a). The Council, like the ALJ, reviews the case de novo, and its decision constitutes the Secretary's final decision. *Id.* § 405.1000(c). Fifth, if all else fails, the provider is entitled to "judicial review of the Secretary's final decision ... as is provided in section 405(g) of this title." 42 U.S.C. § 1395ff(b)(1)(A).

Maxmed Healthcare, Inc. v. Price, 860 F.3d 335, 338 (5th Cir. 2017).

reasonably be relied upon to support a measurement of the overpayment" and reversed the earlier unfavorable decision. Record Document 37-2 at 26-27. The Appeals Council opinion did not address the amount of overpayment that Medicare had recouped prior to the Appeals Council's decision.

According to D&G, it was owed $4,136,258.19 in repayment, plus interest in the amount of $593,294.54 as of August 2017. Record Document 37 at 14, ¶ 37. On the same day that D&G initiated this suit, Novitas repaid Doctors Lab $1,828,133.78. Id. Subtracting this amount, D&G now asserts that the principal owed on the repayment is $2,308,124.41, and that the total interest owed as of December 2019 is $1,138,588.93. Id. Thus, the total amount D&G was owed in December 2019 was $3,446,713.34, but this amount has increased by approximately $20,000 per month because of the interest payments. Id.

### B.   Procedural History

In August 2017, D&G commenced the instant suit, asserting that the Court had jurisdiction over the action pursuant to 42 U.S.C. § 405(g), as applied to Medicare appeals by 42 U.S.C. § 1395ff(b)(1)(A). Record Document 1. The Secretary filed a motion to dismiss, arguing that the Court lacked jurisdiction. Record Document 16. This Court granted the motion to dismiss. Record Document 29; D&G Holdings, LLC v. Price, No. CV 17-1045, 2018 WL 3715748 (W.D. La. July 27, 2018), vacated and remanded sub nom. D&G Holdings, L.L.C. v. Azar, 776 F. App'x 845 (5th Cir. 2019). D&G appealed to the Fifth Circuit. Record Document 31.

The Fifth Circuit vacated the Court's prior ruling and remanded the case, instructing the Court to reconsider its holding in light of a recent Fifth Circuit opinion, In re Benjamin,

932 F.3d 293 (5th Cir. 2019).[3] D&G Holdings, L.L.C. v. Azar, 776 F. App'x 845, 846 (5th Cir. 2019). It also directed the Court to allow D&G to amend its complaint and add a claim for mandamus under 28 U.S.C. § 1361, noting that the holding in Benjamin means this claim is not barred by 42 U.S.C. § 405(h). Id. at 848. The Fifth Circuit rejected this Court's characterization of Novitas's $1.8 million payment to D&G on the day the suit was filed as an "initial determination." Id. While the court did not say what effect this determination should have on D&G's claim, it suggested that this is likely relevant to the § 405(g) analysis under Benjamin and to whether D&G has an adequate alternative remedy that could defeat a mandamus claim. Id.

D&G has now filed an amended complaint asserting jurisdiction pursuant to either § 405(g) or § 1361. Record Document 37. The Secretary again filed a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks jurisdiction under both § 405(g) and § 1361. Record Document 40. Additionally, the Secretary asserts that if the Court finds it has mandamus jurisdiction under § 1361, D&G has failed to state a mandamus claim under Rule 12(b)(6).

## II.    Law and Analysis

### A.    Federal Rule of Civil Procedure 12(b)(1) Standard

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a defendant to challenge the subject matter jurisdiction of the court to hear a case. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). A district court may "find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented

---

[3] After the Fifth Circuit issued its decision in this case, it withdrew its original decision in Benjamin, 924 F.3d 180 (5th Cir. 2019), and substituted the above-cited opinion.

by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Wolcott v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011) (quoting Ramming, 281 F.3d at 161). If such jurisdiction is lacking, the case is properly dismissed. Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). As the party asserting jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. Ramming, 281 F.3d at 161. If a Rule 12(b)(1) motion is filed with other Rule 12 motions, a court should first consider the Rule 12(b)(1) challenge before addressing any challenges based on the merits. Id.

## B. Federal Rule of Civil Procedure 12(b)(6) Standard

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. See Twombly, 550 U.S. at 555; In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. Iqbal, 556 U.S. at 678–79. A court does not

5

evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558. A court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" Wolcott, 635 F.3d at 763 (quoting Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)).

### C.   The **Benjamin** Framework

On appeal, the Fifth Circuit directed the Court to consider its recent decision, In re Benjamin. The case arose when Kenneth Benjamin ("Benjamin") brought an adversarial proceeding against the Social Security Administration ("SSA") during his Chapter 7 bankruptcy proceeding, alleging that SSA had wrongfully recouped funds from him. In re Benjamin, 932 F.3d at 295. SSA moved to dismiss Benjamin's claim for lack of subject matter jurisdiction. Id. It argued that the third sentence of  § 405(h)—which says "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter"—acted as a broad bar on courts exercising jurisdiction under other federal statutes, like 28 U.S.C. § 1334, the bankruptcy jurisdictional statute. Id. at 296. The Fifth Circuit rejected this argument and found that the third sentence of § 405(h) acts only as a bar on those statutory grants of jurisdiction

specifically listed in § 405(h). Id. at 298. Therefore, the third sentence of § 405(h) did not bar Benjamin's claim against SSA under § 1334. Id.

The Benjamin court also offered guidance regarding the interpretation of the second sentence of § 405(h). Id. at 300-02. This sentence reads: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h). The court emphasized that this sentence is distinct from the third sentence and serves two key functions: 1) it "channels claims challenging a certain type of agency decisions (described below) into § 405(g)" and 2) "ensures that § 405(g) is the sole jurisdictional avenue for the channeled claims." In re Benjamin, 932 F.3d at 300. By comparing § 405(h) with 42 U.S.C. § 405(b)(1), the Fifth Circuit concluded that the second sentence of § 405(h) only channels claims "where the would-be plaintiff is challenging a decision regarding his entitlement to benefits." Id. at 301. By this, the court meant that "where an individual is not challenging a decision regarding his entitlement to benefits made after an application for payment and therefore not receiving the statutorily-prescribed hearing under subsection (b)(1), his claim never gets channeled under § 405(h)'s second sentence or reviewed by a court under § 405(g)." Id. at 302 (emphasis in original). If a claim is not channeled into § 405(g) by § 405(h), then § 405(g) jurisdiction is unavailable for that claim, and the plaintiff will need an independent basis of jurisdiction. Id.

The Benjamin court instructed the bankruptcy court to determine whether Benjamin's claim was primarily about his entitlement to benefits—meaning "a payment of money because he (or his sister) is disabled—or [about a] claim for money because the

SSA failed to comply with its own regulations in recouping the overpayment." Id. If it was a claim regarding the entitlement to benefits, the second sentence of § 405(h) channeled the claim into § 405(g). Id. If the claim was primarily a claim for money because of SSA's failure to comply with its regulations, then the claim is not channeled to § 405(g) and Benjamin could bring his claim under the bankruptcy court's § 1334 jurisdiction. Id.

While Benjamin was decided in the context of a Social Security case, several provisions of the Medicare Act incorporate the same provisions at issue in Benjamin. D&G Holdings, L.L.C., 776 F. App'x at 848, n.2. Thus, the Court will apply that framework to the instant case and the initial determination becomes whether the second sentence of § 405(h), as incorporated by 42 U.S.C. § 1395ii, channels D&G's claim to § 405(g) as the sole avenue of review—that is, whether D&G's claim challenges its entitlement to benefits. If it does, then § 405(g) is the sole means of establishing jurisdiction. If it does not, then the Court must consider whether it has mandamus jurisdiction, as that is not barred by the third sentence of § 405(h).

### D.   42 U.S.C. § 405(g) Jurisdiction

The parties agree in their supplemental briefs that D&G's claim is channeled to review under § 405(g) because its claim challenges D&G's entitlement to benefits, though they reach this conclusion in materially different ways. This difference begins with how the parties view the action now before the Court. D&G would have the Court consider the instant case as an appeal from its properly exhausted claim before the Appeals Council. The Secretary, however, urges the Court to consider this claim as an independent

challenge to the Secretary's $1.8 million repayment determination that is separate from the underlying dispute that led to the favorable Appeals Council decision.

According to D&G, the Court must focus on the "action" that was channeled through the agency's appeal process, not on the Secretary's repayment decision made after the Appeals Council decision in isolation. Record Document 53 at 10. When this appeal is viewed as an extension of the properly exhausted action, D&G argues, its claim is an appeal from the underlying overpayment determination, which the parties agree concerns D&G's entitlement to benefit payments. Id. at 11. Thus, D&G contends that the second sentence of § 405(h) channels its claim to review under § 405(g), and D&G has met the requirements for administrative exhaustion under § 405(g) such that the Court can now exercise jurisdiction over the instant claim. Id.

In contrast, the Secretary maintains that his decision to repay $1.8 million to D&G must be considered separately from D&G's challenge to the overpayment determination. The Secretary, citing a similar case in a Texas district court, avers that D&G's challenge to the repayment decision is a challenge to a decision regarding D&G's entitlement to benefits. Record Document 55 at 10-11. According to the Secretary, this means that § 405(g) is the only jurisdictional avenue available to D&G, but D&G cannot satisfy the requirements of § 405(g) because the Fifth Circuit has already held that the repayment decision was not an "initial determination." Id. at 11. The Secretary concludes that the lack of an initial determination is fatal to D&G's claim because § 1395ff(b)(1)(A) limits judicial review under § 405(g) to initial determinations. Record Document 40-1 at 14.

The Court must therefore first determine whether D&G's claim is best considered as a continuation of the properly exhausted "action" or as a separate claim. If it is one "action," then the Court has jurisdiction to review the claim under § 405(g) because the case is an appeal of a properly exhausted claim. If it is not one action, the Court will next have to consider whether the challenge to the repayment decision in isolation is a challenge to D&G's entitlement to benefits such that it is channeled to review under § 405(g) as the only means of establishing jurisdiction. If the claim does not challenge D&G's entitlement to benefits, the Court must consider whether it has mandamus jurisdiction.

### 1.   One "Action"

The Court previously considered whether D&G's current claim was a continuation of the "action" exhausted through the Medicare appeals process and concluded that it was not. D&G Holdings, LLC, 2018 WL 3715748, at *5. In reaching this conclusion, the Court rejected D&G's argument that its present claim is the type of "statutory or constitutional contention that the agency does not, or cannot decide" that a court is permitted to review per the Supreme Court's decision in Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 23 (2000). Id. The Court further noted that D&G does not seek reversal or modification of the Appeals Council decision and that D&G characterizes that decision as "fully favorable." Id. The Court concluded by remarking that the agency's decision regarding the amount it needed to repay D&G was akin to an "initial determination." Id. The Fifth Circuit rejected the Court's analogy to an "initial determination," but otherwise did "not address the correctness of the" Court's initial opinion. D&G Holdings, L.L.C., 776 F. App'x at 848.

Based on that rejection, D&G now argues that the Court should reach the opposite conclusion regarding whether the instant case is part of the same "action" exhausted before the Appeals Council. Record Document 44 at 6, 10-11. D&G contends that if the claim at issue here is not akin to an "initial determination," then the Court should reason instead that it is comparable to the type of reviewable "statutory or constitutional contention that the agency does not, or cannot decide" from Illinois Council. Id. at 10. The Secretary responds that the Court should not consider this as an appeal from the properly exhausted Appeals Council Decision because D&G is asking the Court to be the first to consider its claim that it is entitled to additional repayment amounts. Record Document 47 at 5. Further, he argues that making the factual conclusions necessary to adjudicate the claim would exceed the permissible scope of judicial review, that D&G's claim remains categorically different than what is reviewable under Illinois Council, and that D&G is attempting to appeal from a fully favorable agency decision, which is not permissible. Id. at 5-7.

Despite the Fifth Circuit rejecting the Court's earlier analogy of the instant claim to an initial determination, the Court again concludes that this case cannot be classified as a continuation of the "action" exhausted by receiving a decision from the Appeals Council. First, as the Court previously concluded, D&G's claim is not similar to that at issue in Illinois Council. See D&G Holdings, LLC, 2018 WL 3715748, at *4-5 (comparing and contrasting D&G's claim to the claim in Illinois Council).

Second, the Appeals Council decision was fully favorable to D&G, and courts generally do not review fully favorable decisions. In its amended complaint, D&G describes

11

the Appeals Council Decision as "fully favorable." Record Document 37 at 2, ¶ 1. D&G now argues that this is not entirely accurate because while D&G's legal position was vindicated on appeal, it "remains aggrieved because the Secretary has refused to return all of the money recouped and has refused to pay any interest on those funds that belong to D&G." Record Document 53 at 13. To support its argument, D&G cites multiple cases where a party was permitted to appeal from a favorable decision. Id.

The Court does not find these cases persuasive. In the cases cited by D&G, the party seeking to appeal a favorable decision was in some way denied a remedy requested or was able to point to language in the judgment it sought to appeal that would prejudice the party in the future. Forney v. Apfel, 524 U.S. 266, 271 (1998); United States v. Fletcher ex rel. Fletcher, 805 F.3d 596, 602 (5th Cir. 2015). For example, the cases support the proposition that a party may be sufficiently aggrieved from a favorable decision when the party received compensatory but not punitive damages or when the court's opinion would expose the prevailing party to "considerable litigation expense and potential enormous liability to other policyholders." Leonard v. Nationwide Mut. Ins. Co., 499 F.3d 419, 428 (5th Cir. 2007); La Plante v. Am. Honda Motor Co., Inc., 27 F.3d 731 (1st Cir. 1994).

D&G can make no such claim here. It has not identified any language in the opinion that it now seeks to challenge or that will cause it prejudice in the future. Instead, it argues that it will suffer "substantial financial loss as a result of the Secretary's *implementation* of the Secretary's final decision by failing to repay all recouped funds with interest." Record Document 53 at 14 (emphasis added). Thus, as D&G itself stated, it is not aggrieved by language in the opinion, but rather by how the Secretary has chosen to implement the

directive of the Appeals Council decision. Because D&G cannot identify a way in which it is aggrieved by the decision it purports to be appealing, it is illogical to conclude that the claim now before the Court is a continuation or appeal of that "action."

Third, D&G argues that it could not correct the instant dispute over the amount of repayment it is owed by reopening the Appeals Council decision. Record Document 53 at 30. It explains that reopening is only permissible for a narrow set of reasons involving new evidence or the existence of a clear error in the earlier opinion. Id. The Secretary does not dispute this and contends that D&G could challenge the repayment amount determination by "seeking a reopening of the contractor's effectuation of the Council's decision." Record Document 55 at 16. This further illustrates that the instant case is best considered as separate from the action challenging the initial overpayment determination—if D&G were to challenge the repayment decision through the agency, it would not be by going back to the Appeals Council decision, but by challenging the contractor's actions taken in response to the Appeals decision. The Court therefore concludes that D&G's claim is not a continuation of the "action" exhausted through appeal to the Medicare Appeals Council.

## 2. Entitlement to Benefits

Because D&G's instant claim is not best considered as a continuation of the "action" appealed through the agency, the Court must next consider whether the claim, in isolation, is challenging D&G's entitlement to benefits. While the Secretary concedes that D&G's claim does challenge its entitlement to benefits, Record Document 55 at 10, the Court

cannot simply accept this concession because it is in conflict with the Fifth Circuit's opinion in this matter.[4]

When considering the repayment decision in isolation, the Fifth Circuit explained why the repayment decision in this case was not akin to an initial determination. It reasoned that "initial determinations include an 'initial determination of whether an individual is entitled to benefits' and 'the amount of benefits available to the individual' under Parts A and B of the Medicare Act." D&G Holdings, L.L.C., 776 F. App'x at 848 (quoting 42 U.S.C. §§ 1395ff(a)(1)(A)-(B)). The court continued, saying:

> Here, Novitas determined (by unknown means) how much money it had garnished from D&G and sent a check. Determining that amount has nothing to do with whether D&G was entitled to certain benefits or whether a payment should not be made or no longer made for a particular service. Instead, it involves a determination regarding the amounts of funds that Novitas previously allocated to pay D&G's Medicare debt.

Id.

Thus, the Fifth Circuit has already concluded that D&G's claim is not one regarding its entitlement to benefits and this Court is bound to accept that conclusion. Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am., 272 F.3d 276, 279 (5th Cir. 2001). Because D&G's claim is not about its entitlement to benefits, the second sentence of § 405(h) does not channel the claim to be reviewable under § 405(g), and the Court lacks jurisdiction to consider D&G's claim under § 405(g). In re Benjamin, 932 F.3d at 300. Nevertheless, because the claim is not channeled to be reviewable only under § 405(g), it may still be reviewable if D&G can identify a separate jurisdictional source. In re Benjamin, 932 F.3d

---

[4] The parties do not address the Fifth Circuit's language in their briefing on this issue.

at 300; <u>D&G Holdings, L.L.C.</u>, 776 F. App'x at 848. In this case, D&G has identified a separate source of possible jurisdiction—28 U.S.C. § 1361.

### E.   28 U.S.C. § 1361 Mandamus Jurisdiction

Section 1361 gives a district court original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.The Secretary contends that the Court lacks mandamus jurisdiction under § 1361 because D&G has not established that it has a clear right to receive, or that the Secretary has a nondiscretionary duty to pay, the amount D&G seeks. Record Document 40-1 at 15. D&G counters by arguing that the Secretary has conflated his arguments regarding mandamus jurisdiction and successfully stating a mandamus claim. Record Document 44 at 15. As for jurisdiction, D&G contends that it has successfully alleged that the Secretary has a clear, nondiscretionary duty to repay the amount recouped plus interest. <u>Id.</u> at 14.

The mandamus statute makes no substantive changes from the common law of mandamus. <u>Wolcott</u>, 635. F.3d at 766. In considering a Rule 12(b)(1) motion challenging § 1361 jurisdiction, a court should be "mindful to 'avoid tackling the merits under the ruse of assessing jurisdiction." <u>Id.</u> at 763 (quoting <u>Jones v. Alexander</u>, 609 F.2d 778, 781 (5th Cir. 1980)). For example, a court should not consider whether the action is properly exhausted when examining whether it has mandamus jurisdiction because that conflates the merits of the claim with jurisdiction. <u>Family Rehab., Inc. v. Azar</u>, 886 F.3d 496, 506 (5th Cir. 2018). The Fifth Circuit has previously found mandamus jurisdiction existed if

15

"the action is an attempt to compel an officer or employee of the United States or its agency to perform an allegedly nondiscretionary duty." <u>Wolcott</u>, 635. F.3d at 766.

In this case, D&G's complaint is sufficient to establish mandamus jurisdiction. It alleges that the Secretary has a nondiscretionary duty to repay a principal sum of $2,308,124.41, plus interest, by virtue of the Appeals Council decision, 42 U.S.C. § 1395ddd(f)(2)(B), and 42 C.F.R. § 405.378(j). Record Document 37 at 15, ¶ 41. It alleges that the Secretary has failed to repay this amount and requests an order requiring the Secretary to do so. <u>Id.</u> at 16. Therefore, D&G's amended complaint successfully alleges that the Court has jurisdiction over its mandamus claim. The Secretary's arguments are better addressed as an argument that D&G has failed to state a mandamus claim under Federal Rule of Civil Procedure 12(b)(6).

### F.   Failure to State a Mandamus Claim

To state a claim for mandamus, a plaintiff must satisfy three elements: 1) the plaintiff has a clear right to relief; 2) the defendant has a clear duty to act; and 3) no other adequate remedy exists. <u>Wolcott</u>, 635 F.3d at 768. A duty is clear when it is "so plainly prescribed as to be free from doubt." <u>Id.</u> (quoting <u>Giddings v. Chandler</u>, 979 F.2d 1104, 1108 (5th Cir. 1992)). Mandamus is not available to review discretionary acts. <u>Id.</u> The requirement that no other adequate remedy exist demands that a plaintiff exhaust any administrative remedies prior to seeking mandamus. <u>Id.</u> Because the nature of the remedy is "extraordinary," the decision to grant or deny a writ remains within the discretion of a court even if all three elements are satisfied. <u>Id.</u>

16

The Secretary argues that D&G cannot satisfy the second and third elements of its claim.[5] He asserts that D&G has failed to show that it has a clear right to relief or that the Secretary has a clear, ministerial duty to pay the specific amount D&G alleges the Secretary still owes. He points to the fact that D&G's expert in this matter has provided several possible calculations of what the Secretary may owe D&G based on how the Court interprets certain payment codes. Record Documents 40-1 at 16-18 and 47 at 9. He also argues that, accepting D&G's allegations as true, it has failed to satisfy the mandates of Rule 12(b)(6) because the amount D&G alleges it is owed is a conclusory and unsupported assertion. Record Document 40-1 at 20.

D&G responds that it can satisfy both elements because 42 U.S.C. § 1395ddd(f)(2)(B) demonstrates that the Secretary has a clear, nondiscretionary duty to repay D&G all previously recouped amounts, plus interest at the rate the government charged interest to D&G. Record Document 44 at 17. It contends that because § 1395ddd(f)(2)(B) does not authorize partial repayment and D&G's complaint alleges that the Secretary has only partially repaid D&G, he has a clear duty to pay the outstanding amounts. Id. at 17-18. It also asserts that the Court must accept its allegation that over two million dollars remain outstanding as true for purposes of a rule 12(b)(6) motion. Id. at 18. Finally, D&G argues that the Court should not consider the expert evidence at this

_____

[5] The Secretary raised arguments relevant to the merits of D&G's claim when arguing that § 1361 jurisdiction is improper. Because the Court did not consider these arguments in connection with the Secretary's Rule 12(b)(1) challenge, this section incorporates those arguments.

stage because that evidence is not attached to or referenced in the amended complaint. Id. at 19.

Both parties direct the Court to consider Wolcott v. Sebelius as support for their position. In Wolcott, the plaintiff brought several mandamus claims, but the one most similar to D&G's was a claim seeking an order compelling the defendants to "process and pay claims that have been successfully appealed in accordance with final administrative decisions." Wolcott, 635 F.3d at 768. To support his claim, the plaintiff attached a favorable decision by an ALJ which reversed the agency's denial of ninety-five claims for services and stated that the plaintiff was entitled to Medicare payment for services rendered in each case. Id. He also attached a remittance notice that corresponded to the list of patients at issue in the ALJ decision and had a handwritten note saying that only one treatment per patient was paid while payment for the remaining treatments for each patient was denied. Id. at 768-69. The defendant challenged the mandamus claim, arguing that Wolcott had failed to plead a set of facts that raised his right to relief beyond speculation because he had failed to include all remittance notices related to the ALJ decision and that Wolcott's claim was attempting to challenge the Secretary's exercise of discretion regarding the amount it was obligated to pay by the decision. Id. at 769.

The Fifth Circuit considered these arguments and concluded that the plaintiff had stated a mandamus claim. First, it rejected defendant's argument that Wolcott was seeking to challenge the amount he was repaid. Instead the court concluded that:

> Wolcott's complaint does not allege that it was not paid enough for each successively appealed claim; rather, it alleges that the defendants wrongfully redetermined that a subset of the successfully appealed claims were not covered by Medicare because the treatments were not medically

> necessary, and that these redeterminations denying coverage were in direct contravention to a binding June 23 ALJ decision that already dealt with this issue.

Id. at 769. Based on this, the court determined that Wolcott had successfully pleaded that he had a clear right to relief and the defendant had a nondiscretionary duty to act. Id. at 770. The court also rejected the defendant's argument that Wolcott needed to attach all remittance notices to his complaint and identify each specific line item that it contested from the ALJ decision in order to state a valid claim because a plaintiff has no duty to present evidence upon filing a complaint. Id. at 771.

Similar to Wolcott, D&G claims that the Secretary has failed to pay the full amount owed after the Appeals Council's decision. That is where the comparison breaks down, however. As the Fifth Circuit explained in Wolcott, that plaintiff was challenging the fact that defendants had redetermined that a subset of claims were not payable for the exact reason the ALJ decision had already rejected. The court stated that Wolcott was not alleging that "he was not paid enough for each successively appealed claim." In contrast, D&G does claim that it was not paid enough for its successfully appealed claim. It seeks to challenge the amount the Secretary paid in order to effectuate the Appeals Council decision. It does not allege that the Secretary re-denied some payment the Appeals Council clearly directed it to pay. It does not allege that the Appeals Council decision determined that any specific amount was recouped and therefore must be returned as an overpayment. Therefore, D&G's claim is different than that held to be a mandamus claim in Wolcott.

Further, D&G has not directed the Court to any authority from which it can conclude that D&G has a clear right to relief.  While the <u>Wolcott</u> court did not require the plaintiff to attach all of the remittance notices to its complaint to survive a motion to dismiss, it relied on the examples the plaintiff did attach in finding that Wolcott had stated a claim for mandamus relief. From this, the court demonstrated that the district court would be able to cross reference each payment the plaintiff alleged had been wrongfully denied with the ALJ decision and determine that payment was clearly owed to the plaintiff based on the ALJ decision.

Here, however, D&G has failed to provide such proof or plead that similar proof exists. D&G alleges that the Appeals Council reversed the lower decision and that the Secretary was therefore obligated to repay all recouped funds, plus interest. To support this, D&G attached the favorable Appeals Council decision and cited to § 1395ddd(f)(2)(B) as the source of the nondiscretionary duty to repay all previously recouped funds. D&G's complaint states $4,136,258.19 was recouped and subject to repayment, that $1,828,133.78 has been repaid, and that $2,308,124.41 plus interest remains to be repaid. What D&G does not do, though, is plead any facts supporting why that calculation is clearly owed. In other words, D&G has pointed to no authority defining what constituted a recouped overpayment that the Secretary was obligated to repay pursuant to § 1395ddd(f)(2)(B). Without identifying any authority directing what payments should be considered as recoupments now subject to repayment pursuant to the Appeals Council decision, the Court would be tasked with deciding this. Therefore, D&G has failed to plead

that it has a clear right to relief, and it has thus not established all elements of its mandamus claim. As such, D&G has failed to state a claim under § 1361.

## III.   Conclusion

Because the Court lacks jurisdiction to hear Plaintiff's claim under 42 U.S.C. § 405(g) and because Plaintiff has failed to state a claim under 28 U.S.C. § 1361, Defendant's motion to dismiss [Record Document 40] is **GRANTED**. A judgment consistent with this ruling will be issued herewith.

**THUS DONE AND SIGNED** this 18th day of November, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE